UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re Subpoena and Deposition Notice to George Howard III*

18 Misc. 538 (P1)

Related to *Tholen v. Assist America, Inc.*, No. 17 Civ. 3919 (DWF) (SER) (D. Minn.)

**MEMORANDUM OF NON-PARTY GEORGE HOWARD III IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

Serrin Turner
Ryan S. Baasch
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200

*Attorneys for Non-Party George Howard III*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND.................................................................................................2

LEGAL STANDARD..............................................................................................................7

ARGUMENT...........................................................................................................................8

I.    THE SUBPOENA SHOULD BE QUASHED BECAUSE INFORMATION ABOUT MR. HOWARD IS IRRELEVANT AND ANY RELEVANT INFORMATION ABOUT THE COMPANY CAN BE OBTAINED FROM ASSIST AMERICA................................................................................................8

II.   A PROTECTIVE ORDER VACATING MR. HOWARD'S DEPOSITION NOTICE IS WARRANTED FOR THE SAME REASONS THAT THE SUBPOENA SHOULD BE QUASHED ...........................................................12

CONCLUSION......................................................................................................................15

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*3M Co. v. ACS Indus., Inc.*,
    2016 WL 9308317 (D. Minn. Mar. 10, 2016) ........................................................................... 13

*Cardenas v. Prudential Ins. Co. of Am.*,
    2003 WL 21293757 (D. Minn. May 16, 2003) ......................................................................... 13

*City of Farmington Hills Emp. Ret. Sys. v. Wells Fargo Bank, N.A.*,
    2012 WL 13048263 (D. Minn. Sept. 17, 2012) ........................................................................ 13

*Deluca v. Bank of Tokyo-Mitsubishi UFS*,
    2007 WL 2589534 (S.D.N.Y. Aug. 30, 2007) ............................................................................ 8

*In re Dixie Farms Market*,
    28 F. App'x 673 (9th Cir. 2002) .................................................................................................. 8

*Filetech, S.A. v. France Telecom, S.A.*,
    1999 WL 92517 (S.D.N.Y. Feb. 17, 1999) .......................................................................... 14, 15

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996) .................................................................................................................... 8

*Hanson v. Loparex Inc.*,
    2010 WL 11432148 (D. Minn. Sept. 27, 2010) ........................................................................ 13

*HCA Health Servs. of Midwest, Inc. v. Nat'l Bank of Commerce*,
    745 S.W.2d 120 (Ark. 1988) ..................................................................................................... 10

*Lacount v. Salkowski*,
    654 N.W.2d 295 (Wis. Ct. App. 2002) ..................................................................................... 10

*Miller Brewing Co. v. Best Beers of Bloomington, Inc.*,
    579 N.E.2d 626 (Ind. Ct. App. 1991), *vacated on other grounds*, 608 N.E.2d
    975 (1993) ................................................................................................................................. 10

*Moe v. Sys. Transp., Inc.*,
    270 F.R.D. 613 (D. Mont. 2010) ................................................................................................. 8

*N'Diaye v. Metro. Life Ins. Co.*,
    2018 WL 2316335 (S.D.N.Y. May 8, 2018) ............................................................................. 10

*Nachurs Alpine Solutions, Corp. v. Nutra-Flo Co.*,
    2017 WL 1380460 (N.D. Iowa Apr. 17, 2017) ......................................................................... 11

*Night Hawk Ltd. v. Briarpatch Ltd.*,
   2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ..................................................................7

*Parker v. Four Seasons Hotels, Ltd.*,
   291 F.R.D. 181 (N.D. Ill. 2013)........................................................................................8

*Peoples Nat'l Bank, N.A. v. Mehlman*,
   2016 WL 3268761 (E.D. Mo. June 7, 2016) .................................................................11

*Schoolcraft v. City of New York*,
   2012 WL 2161596 (S.D.N.Y. June 14, 2012) .................................................................7

*Shetka v. Kueppers, Kueppers, Von Feldt, and Salmen*,
   454 N.W.2d 916 (Minn. 1990)......................................................................................1, 9

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*,
   2006 WL 1328259 (S.D.N.Y. May 16, 2006) ...............................................................13

*Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*,
   2007 WL 4166035 (S.D.N.Y. Nov. 20, 2007) .................................................................7

*Smith v. Courter*,
   575 S.W.2d 199 (Mo. Ct. App. 1978)..............................................................................9

*Stone v. Morton Int'l Inc.*,
   170 F.R.D. 498 (D. Utah 1997) .....................................................................................15

*Thomas v. Int'l Business Machs.*,
   48 F.3d 478 (10th Cir. 1995) .........................................................................................13

*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588 (D. Kan. 2003).......................................................................................7

*Treppel v. Biovail Corp.*,
   2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) .................................................................14

*Warnke v. CVS Corp.*,
   265 F.R.D. 64 (E.D.N.Y. 2010) ....................................................................................11

**STATUTES**

Minn. Stat. § 549.20 subdiv. 3 ...................................................................................................9

**RULES**

Fed. R. Civ. P. 26(b)(2)(C)(i) ...................................................................................................11

Fed. R. Civ. P. 26(c) ..................................................................................................................8

Fed. R. Civ. P. 26(c)(1) ........................................................................................................... 7

Fed. R. Civ. P. 45, Advisory Committee Note to 1970 Amendment ........................................ 7

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................................. 7

Case 1:18-mc-00538-DLC   Document 2   Filed 11/20/18   Page 5 of 20

**PRELIMINARY STATEMENT**

On August 24, 2017, Dr. Richard H. Tholen ("Tholen") commenced a diversity action in Minnesota District Court against Assist America, Inc. ("Assist America" or "AA") for tort and contract claims arising out of a discrete personal injury dispute. *See Tholen v. Assist America*, No. 17 Civ. 3919 (D. Minn.).[1] Movant George Howard III, who resides in New York, is Assist America's founder and chairman of the board, but he is not a party to the underlying action, nor was he involved in any of the conduct alleged in Tholen's complaint. Apparently recognizing Mr. Howard's irrelevance to the lawsuit, Tholen never sought any documents or information from (or about) Mr. Howard throughout fact discovery. But in August of this year, as fact discovery was about to close, Tholen was permitted to amend his complaint to add a claim for punitive damages, and he apparently now believes this opens the door to discovery on Mr. Howard. He is flat wrong.

First, Tholen has propounded a subpoena *duces tecum* that seeks production of documents (in this district) about Mr. Howard's *personal* information—chiefly, his finances. Yet these documents do not bear a shred of relevance to punitive damages. Minnesota law is crystal clear that financial information about a non-party has no bearing on the availability or amount of punitive damages, and that "discovery directed to ascertaining such information is not relevant nor, if furnished, would [be] information lead[ing] to relevant admissible evidence." *Shetka v. Kueppers, Kueppers, Von Feldt, and Salmen*, 454 N.W.2d 916, 921 (Minn. 1990). Alternatively, to the extent Tholen's document subpoena seeks information about *Assist America's* financial condition, he is seeking it from the wrong place. A plaintiff cannot seek documents from a non-party if the documents can be more easily obtained from the opposing party in the litigation. If Tholen wants documents about Assist America, he can, and must, seek them from Assist America itself.

---

[1] All docket cites contained herein are to the docket in this underlying action.

1

Second, Tholen has also issued a deposition notice seeking to depose Mr. Howard (again, in this district).  The deposition notice is improper for similar reasons as the subpoena.  First, insofar as Tholen seeks to depose Mr. Howard about his personal finances, such information is categorically irrelevant to the issue of punitive damages.  And insofar as Tholen seeks to depose Mr. Howard about Assist America's financial information, once again he is seeking this information from the wrong source.  Case law on this point too is clear:  In a suit with a corporate defendant, the plaintiff cannot depose a top executive (such as Mr. Howard) unless that executive possesses some unique knowledge relevant to the case and the information is unavailable through less burdensome means (*e.g.*, from lower-ranking employees).  Mr. Howard possesses no special knowledge about the company's financial condition that the company itself cannot provide, and Tholen has not come close to exhausting efforts to seek such information directly from the company.

Accordingly, this Court should quash Tholen's subpoena and enter a protective order blocking Mr. Howard's deposition from going forward.

**FACTUAL BACKGROUND**

On August 24, 2017, Tholen initiated a diversity action against Assist America, a provider of global emergency medical services, in the United States District Court for the District of Minnesota, alleging claims for negligence and breach of contract.  *See* Compl. ¶¶ 1, 64-85, Dkt. No. 1.  The thrust of the Tholen's complaint is that, while he was traveling abroad, AA allegedly failed to provide him with an emergency medical evacuation to which he believes he was entitled under his membership in the American Medical Association.  *See id.* ¶¶ 19-20.  In particular, Tholen alleges that, while vacationing in Mexico, he suffered a severe injury on April 19, 2015, but AA did not provide an emergency evacuation because it believed at the time he was receiving appropriate medical care at a Mexican hospital.  *Id.* ¶¶ 28, 53.  Tholen boarded a flight out of Mexico

2

on April 21, 2015 with an extended layover at an intermediary airport and "eventually landed in Minnesota"—his home state—the next morning. *Id.* ¶ 55. Tholen saw orthopedic and vascular surgeons later that day and had multiple surgical procedures done "[o]ver the course of several weeks." *Id.* ¶¶ 56-60. It was ultimately determined that Tholen would need a leg amputation. *Id.* ¶ 61. Tholen sued AA, initially seeking "[a]n award of damages, including interest, in an amount to be determined at trial" as well as "costs, expenses, attorney's fees, and disbursements." *Id.* at Request for Relief. He did not initially seek punitive damages.

On December 15, 2017, the district court entered a scheduling order setting June 1, 2018 as the deadline for motions to add a claim for punitive damages, and August 1, 2018 as the deadline for fact discovery. *See* Dkt. No. 14. Fact discovery was later extended to August 31, 2018. *See* Dkt. No. 30. After conducting substantial discovery, on May 15, 2018, Tholen filed a motion for leave to amend the complaint to assert punitive damages. *See* Dkt. No. 31. That motion was denied on procedural grounds on June 29, 2018, Dkt. No. 85, but Tholen filed a corrected version on July 13, 2018, Dkt. No. 87. Specifically, Tholen sought leave to add a punitive damages claim based on allegations that specific AA employees did not gather Tholen's medical information in accordance with AA's policies, and that AA's clinical director failed to timely respond to Tholen's concerns. *See* Dkt. No. 88 at 3; Am. Compl., Dkt. No. 96 ¶¶ 49-51, 66-77, 106-114, 121-130. AA opposed Tholen's motion, arguing that amendment would be futile because Tholen failed to allege the requisite knowledge or intentional disregard necessary for punitive damages, and because punitive damages are unavailable for contract claims. Dkt. No. 91 at 24-25, 29-30. The magistrate judge granted Tholen's motion to amend, but noted that "[i]t may well be that more thorough briefing leads to the conclusion that Tholen's punitive damages claim is foreclosed as a matter of law." Dkt. No. 95 at 7; *see also id.* (expressing these arguments are best raised at "summary

3

judgment"). The amended complaint was entered on the docket on August 14, 2018. Dkt. No. 96. AA filed objections to the magistrate judge's ruling on August 27, 2018 (Dkt. No. 97), but the district judge overruled them, while agreeing that the ultimate viability of punitive damages "will be more appropriately considered on summary judgment." Dkt. No. 122 at 3.

Notwithstanding that fact discovery was about to close, Tholen then immediately noticed a deposition of Mr. Howard on August 14, 2018, and propounded a subpoena *duces tecum* intended for Mr. Howard three days later. *See* Declaration of Serrin Turner ("Turner Decl."), Exs. 1-3. Tholen provided the subpoena only to AA's counsel, who informed Tholen that it was not authorized to accept service on Mr. Howard's behalf. *See* Dkt. No. 113 at 5; Dkt. No. 99 at 3 n.2; Dkt. No. 130-1. Tholen never made any attempt to serve the subpoena on Mr. Howard personally. The subpoena commands compliance in this district, and the deposition notice indicates the deposition will take place in this district. Turner Decl. Exs. 1 & 3.

On August 28, 2018, AA moved to quash and for a protective order in the Minnesota District Court. Dkt. No. 98. In his opposition to AA's motion, Tholen made abundantly clear that the discovery he seeks from Mr. Howard relates solely to his new claim for punitive damages.[2] Dkt. No. 113. The magistrate judge held a hearing on October 30, 2018 and directed the parties to meet and confer regarding Tholen's discovery requests. Dkt. No. 127. On November 6, 2018, Tholen and AA jointly filed a self-styled "grid" documenting each of Tholen and AA's positions on each specific request in the document subpoena. Dkt. No. 130-1.

---

[2] *See, e.g.*, Dkt. No. 113 at 1-2 ("Assist America refused to provide Dr. Tholen discovery that related to punitive damages before the Court granted Dr. Tholen's motion for leave to add that request to the case. Dr. Tholen thus served a deposition notice for Mr. Howard the day after the Court granted his motion [to amend]."); *id.* at 5 ("Dr. Tholen . . . immediately sought discovery on punitive damages after the Court's August 13 order [on amendment] to ensure he completed it during fact discovery."); *id.* at 8 (arguing that a protective order is not warranted because "th[e] Court has already found that punitive damages *is* at issue in the case." (emphasis in original)); *id.* at 16 ("Before August 13, Dr. Tholen had no request for punitive damages . . . Dr. Tholen thus sought discovery just after having the opportunity to do so.").

4

Tholen modified several of his requests as restated in the grid, but they are essentially the same as stated in the original subpoena. They largely seek documents concerning Mr. Howard's *personal* wealth and income derived from Assist America, *e.g.*:

- "[d]ocuments sufficient to show any income, profits, distributions, and/or compensation, you have received from, or associated with, Assist America from 2010-2017";

- "[d]ocuments sufficient to show any financial transactions between Mr. Howard and Assist America relating to any property owned by either Mr. Howard or Assist America";

- "[d]ocuments sufficient to show any transfer or sale between Assist America and Mr. Howard of assets relating to Assist America in the last 5 years";

- "[d]ocuments sufficient to show any transaction over $50,000 involving Assist America and Mr. Howard in the last 5 years"; and

- "[d]ocuments sufficient to show ownership interest of Mr. Howard in any Assist America property."

*See id.*

The subpoena, as amended, also seeks documents from Mr. Howard concerning various aspects of Assist America's corporate affairs—notwithstanding that the company itself would be expected to maintain documents of the nature requested. These requested documents include:

- Assist America's "annual tax filings, starting in 2010";

- "[d]ocuments sufficient to show all persons with an interest (whether owner, shareholder, secured party, debtor, or otherwise legally entitled) in Assist America and the values of their respective interests in the last 5 years";

- documents showing Mr. Howard's "role(s)" in the company "from founding through present"; and

- dates of the company's board meetings attended by Mr. Howard.[3]

---

[3] Only one request in the subpoena has any ostensible connection to the actual facts of Tholen's complaint, as Request No. 4 seeks "[a]ll communications relating to Dr. Tholen, this litigation, or Dr. Tholen's request for services in April 2015." However, without waiving any objections to this request, counsel for Mr. Howard is authorized to represent that no non-privileged documents exist that are responsive.

5

As reflected in the "grid," AA lodged objections on the company's behalf to Tholen's various subpoena requests, but the company also emphasized in responding to each request that "George Howard III is consulting separate counsel, who will respond on Mr. Howard's behalf after proper service of revised subpoena." *See e.g.*, *id.* at 2. On November 6, 2018, the magistrate judge denied AA's motion for a protective order and to quash on the basis that "[AA] is not representing Mr. Howard." Dkt. No. 131. Although Mr. Howard had not yet been served with the subpoena and had not made any appearance in the case, the magistrate judge directed that Mr. Howard should "interpose a response to Plaintiff's revised discovery request" within two weeks of the November 6 order. *Id.*

Mr. Howard subsequently retained undersigned counsel. *See* Turner Decl. Undersigned counsel met and conferred telephonically with Tholen's counsel on November 14, 2018. *Id.* ¶ 11. Undersigned counsel informed Tholen's counsel that Mr. Howard categorically objects to the subpoena and deposition notice, explaining that Mr. Howard's personal finances were irrelevant to the issue of punitive damages against Assist America, and that, to the extent Tholen sought discovery relating to Assist America's finances, he needed to propound discovery requests upon *Assist America* (such as through a 30(b)(6) notice) instead of Mr. Howard. *Id.* Tholen's counsel indicated that he was unwilling to withdraw the subpoena or to forego the deposition. *Id.*

Two days after this meet-and-confer, on Friday, November 16, 2018, Tholen filed a motion against *Assist America* in the Minnesota proceedings to compel the company to provide "financial information relevant to punitive damages." Dkt. No. 135 at 1. Tholen's motion referenced objections Assist America had made *in June 2018* to producing a 30(b)(6) witness to testify about the company's financial information as well as objections to written discovery requests for such information that Assist America had made *in August 2018*. Dkt. Nos. 137 at 2-3, 138-1, 138-2.

6

Tholen never moved to compel on either issue at the time the objections were made; but now (in the wake of the meet-and-confer with undersigned counsel explaining the impropriety of seeking information from Mr. Howard), Tholen is seeking for the Minnesota district court to overrule the objections to compel financial discovery from Assist America. Tholen's recently filed motion remains pending.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(d)(3), "the district where compliance is required must quash or modify a subpoena that," among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). In turn, "[i]t is well settled . . . that the scope of discovery under [a Rule 45] subpoena is the same as the scope of discovery under Rule 26(b)." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *see also Schoolcraft v. City of New York*, 2012 WL 2161596, at *11 (S.D.N.Y. June 14, 2012) (same); Fed. R. Civ. P. 45, Advisory Committee Note to 1970 Amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules."). Accordingly, subpoenas seeking irrelevant material must be quashed. *See Night Hawk Ltd. v. Briarpatch Ltd.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) ("relevance" is at the core of undue burden inquiry); *Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*, 2007 WL 4166035, at *2 (S.D.N.Y. Nov. 20, 2007) (quashing subpoenas seeking a non-party's employment personnel records from five non-party employers since the records were "not relevant to the claim or defense of any party").

Under Federal Rule of Civil Procedure 26(c)(1), "any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1). A court "may limit discovery by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden

7

or expense.'" *Deluca v. Bank of Tokyo-Mitsubishi UFS*, 2007 WL 2589534, at *2 (S.D.N.Y. Aug. 30, 2007) (quoting Fed. R. Civ. P. 26(c)).

## ARGUMENT

**I.   THE SUBPOENA SHOULD BE QUASHED BECAUSE INFORMATION ABOUT MR. HOWARD IS IRRELEVANT AND ANY RELEVANT INFORMATION ABOUT THE COMPANY CAN BE OBTAINED FROM ASSIST AMERICA**

The only purported basis for Tholen's document subpoena is his recently added claim for punitive damages. Yet Mr. Howard is not a party to the underlying litigation and is not subject to any punitive damages claim in the case. Thus, information about Mr. Howard's personal finances is categorically irrelevant to the issue of punitive damages. To the extent the subpoena seeks documents about Assist America's financial information, Tholen can obtain such documents from the company itself, as he is belatedly attempting to do through his recently filed motion to compel in Minnesota. There is no basis to burden Mr. Howard, a third party, with responding to separate, highly intrusive discovery. The subpoena should be quashed.

In diversity actions, such as here, "the propriety of an award of punitive damages and the factors the jury may consider . . . are questions of state law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 463 (1996) (alterations and citation omitted). Accordingly, in discovery disputes concerning punitive damages in a diversity action, relevance turns on what *state* law deems relevant. *See, e.g.*, *In re Dixie Farms Market*, 28 F. App'x 673, 677 (9th Cir. 2002) (relying on state law to determine relevance of discovery sought on punitive damages); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 185 (N.D. Ill. 2013) (relying on state law to determine relevance of discovery sought by plaintiff); *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 620–21 (D. Mont. 2010) (relying on state law to determine relevance of financial information for assessing punitive damages).

Minnesota has codified the factors relevant to assessing punitive damages. *See* Minn. Stat. § 549.20 subdiv. 3. Those factors include "the financial condition of the defendant"—but not the financial condition of any non-party. *See id*. And, in *Shetka v. Kueppers, Kueppers, Von Feldt, and Salmen*, the Minnesota Supreme Court squarely held that financial information about a non-party is irrelevant to the issue of punitive damages. 454 N.W.2d at 918. In that case, the plaintiff brought a malpractice action against a law firm partnership where *one* partner was alleged to have acted tortiously. *Id.* at 917–18. The plaintiff nonetheless sought pre-trial discovery concerning the other partners' financial assets, on the theory that they were vicariously liable for punitive damages stemming from their colleague's malpractice. *Id.* at 918. The trial court initially allowed the discovery to proceed; but on interlocutory appeal, the Minnesota Supreme Court overruled. Even though the non-party partners conceded that they could be vicariously liable if punitive damages were awarded against the non-defendant, the Court held that "it does not follow that [their] financial condition . . . is relevant to the jury's computation of the amount of the punitive damage award under [Minnesota law]." *Id.* at 918. To the contrary, the Court held that only "the financial condition . . . of those who actively perpetrated the wrongful conduct" could be considered at trial, in order to "ensure that any amount awarded as punitive damages relates to the culpability of the wrongdoer." *Id.* at 921. Thus, the Court concluded that "discovery directed to ascertaining such information [about the nonculpable partners] is not relevant nor, if furnished, would [be] information lead[ing] to relevant admissible evidence." *Id.* at 921 (ordering "writ of prohibition preventing [district court] from compelling discovery").

The Minnesota Supreme Court's ruling accords with numerous similar precedents in various jurisdictions. For example, in *Smith v. Courter*, 575 S.W.2d 199, 209 (Mo. Ct. App. 1978), a Missouri appeals court determined that, because a punitive damages award could not be based on

9

the net worth of vicariously liable individuals, the individual wealth of those individuals was not relevant. Similarly, in *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 579 N.E.2d 626, 642-43 (Ind. Ct. App. 1991) (vacated on other grounds), an Indiana appeals court held that a "verdict for punitive damages against a defendant based on the wealth of someone else is plain error." Other courts have reached similar holdings. *See, e.g.*, *Lacount v. Salkowski*, 654 N.W.2d 295, 300 (Wis. Ct. App. 2002) (noting that the Wisconsin Supreme Court has held that evidence of the wealth of parents who are vicariously liable for their child is irrelevant to punitive damages); *HCA Health Servs. of Midwest, Inc. v. Nat'l Bank of Commerce*, 745 S.W.2d 120, 124 (Ark. 1988) (trial court erred by permitting plaintiffs to emphasize the size and wealth of non-party parent corporation).

These authorities make plain that the entire issue of Mr. Howard's personal financial information is irrelevant to any punitive damages award that Tholen might seek at trial. Tholen does not allege that Mr. Howard had any personal involvement in the events at issue in this lawsuit, and he is not named personally as a defendant. (Indeed, Mr. Howard's name is not even mentioned in the Complaint.) Nor does Tholen allege that Mr. Howard could be held vicariously liable for any punitive damages awarded against Assist America—but even if that *were* the case, it would not matter, as the foregoing case law shows. Only the financial condition of *Assist America*—the alleged culpable party—is potentially relevant to the issue of punitive damages. Mr. Howard's personal finances are beside the point.

Alternatively, to the extent that any of Tholen's subpoena requests seek financial information about *Assist America*, the subpoena should be directed to the company, not Mr. Howard. Again, the law here is clear: courts must "consider whether the discovery 'sought can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *N'Diaye*

10

*v. Metro. Life Ins. Co.*, 2018 WL 2316335, at *7 (S.D.N.Y. May 8, 2018) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). This concern is "particularly salient" where a party opts to seek documents from a nonparty without first attempting to compel its adversary to produce the same documents. *Id.*; *see also Nachurs Alpine Solutions, Corp. v. Nutra-Flo Co.*, 2017 WL 1380460, at *6 (N.D. Iowa Apr. 17, 2017) (granting nonparty's motion to quash subpoena where the plaintiff did not first seek to obtain the documents from the defendant); *Peoples Nat'l Bank, N.A. v. Mehlman*, 2016 WL 3268761, at *2–3 (E.D. Mo. June 7, 2016) (granting motion to quash subpoenas served on two nonparties since the documents were in the possession of a party to the litigation); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) (noting that a defendant "is not entitled" to obtain information from a nonparty where it is possible to "obtain the information from less intrusive means").

For example, Tholen's subpoena (as amended by the jointly filed "grid") seeks "Assist America's annual tax filings from 2010-2017." Dkt. No. 130-1 at 4. Plainly, Assist America itself would have these documents, and Tholen has provided no reason why he cannot obtain such documents from the company as opposed to seeking them from Mr. Howard personally. Likewise for Tholen's request for "[d]ocuments sufficient to show all persons with an interest (whether owner, shareholder, secured party, debtor, or otherwise legally entitled) in Assist America and the values of their respective interests in the last 5 years." *Id.* at 3. These document requests relate to core corporate information that can be straightforwardly obtained from the company, without burdening Mr. Howard. The same goes for all other documents Tholen seeks insofar as they relate to Assist America's financial condition.

Finally, it should be noted that some of the requests in Tholen's subpoena have no apparent relation to either Mr. Howard's finances *or* the company's finances. In particular, Tholen seeks

11

documents showing Mr. Howard's roles in the company "from founding through present" (which would cover a period of nearly 30 years), and dates of the company's board meetings attended by Mr. Howard since 2014. *Id.* at 1-2. It is utterly unclear how these requests bear on the issue of punitive damages at all. Moreover, they cover a time period well outside the scope of Tholen's lawsuit. Accordingly, in addition to objecting on the grounds that the requested documents could be more easily obtained from the company, Mr. Howard objects to these requests on the additional ground that they are wholly irrelevant and overbroad.[4]

## II. A PROTECTIVE ORDER VACATING MR. HOWARD'S DEPOSITION NOTICE IS WARRANTED FOR THE SAME REASONS THAT THE SUBPOENA SHOULD BE QUASHED

Along with quashing the document subpoena, the Court should also enter a protective order prohibiting Mr. Howard's deposition. As with the document subpoena, to the extent that Tholen seeks to depose Mr. Howard about his own personal finances, such information is not relevant, and to the extent that Tholen seeks to depose Mr. Howard about the company's finances, Mr. Howard is not the proper deponent.

Tholen has not specified what exactly he seeks to depose Mr. Howard about, but if the document subpoena is any guide, it is plain that the deposition would focus on Mr. Howard's personal finances and any income or other wealth he has received from Assist America. As explained above, Mr. Howard's personal financial information is categorically irrelevant to the issue

---

[4] To the extent that the Court were to find that any of the requests in the subpoena are relevant to the issue of punitive damages against Assist America and that they are properly directed to Mr. Howard, Mr. Howard reserves all objections as to overbreadth and undue burden, particularly with respect to the timeframes of the requests. Whatever the conceivable relevance of any of the requests, there is no justification to require Mr. Howard to undertake a search for documents covering five or more years, as many of the requests would require as written.

of punitive damages. Thus, just as Tholen is barred from seeking documents reflecting Mr. Howard's personal information, so too Tholen is barred from seeking Mr. Howard's testimony on the same.

Alternatively, to the extent Tholen is seeking information about *Assist America* that might be relevant to the issue of punitive damages, Tholen is not entitled to seek such information directly from Mr. Howard, the company's chairman. It is well-established that litigants suing a company cannot seek deposition testimony from top corporate executives without—at a bare minimum—first seeking to obtain such information from the company itself or other, less senior employees. *See, e.g.*, *Thomas v. Int'l Business Machs.*, 48 F.3d 478, 483-84 (10th Cir. 1995) (explaining that it is "clear beyond peradventure" that a "protective order" barring deposition of corporate defendant's chairman is warranted where the deposing party cannot "demonstrate that the information she seeks to obtain . . . could not be gathered from other [corporate] personnel"). This principle has given rise to what is known as the "apex doctrine," which requires that a plaintiff seeking to depose a defendant corporation's senior executives demonstrate that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Hanson v. Loparex Inc.*, 2010 WL 11432148, at *2 (D. Minn. Sept. 27, 2010).[5]

---

[5] At risk of belaboring the point, this inquiry is routinely used in both the district where the underlying litigation is occurring and in this district. *See e.g.*, *Cardenas v. Prudential Ins. Co. of Am.*, 2003 WL 21293757, at *1 (D. Minn. May 16, 2003) (explaining that courts frequently restrict efforts to depose senior executives "where a party seeking the deposition can obtain the same information through less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case"); *City of Farmington Hills Emp. Ret. Sys. v. Wells Fargo Bank, N.A.*, 2012 WL 13048263, at *3 (D. Minn. Sept. 17, 2012) ("At bottom, Plaintiffs have not shown any unique or special knowledge that is not otherwise available from other sources. . . . [T]he Court is convinced that deposing [senior executives] is a luxury for which Plaintiffs have not demonstrated a need."); *3M Co. v. ACS Indus., Inc.*, 2016 WL 9308317, at *3 (D. Minn. Mar. 10, 2016) ("In sum, [plaintiff] has not established that [the executive] has any personal knowledge, much less unique knowledge, regarding the substantive facts that bear on the claims and defenses in this case. Further, [plaintiff] has not demonstrated that its stated motivations for seeking the deposition of [the executive] cannot be met through less burdensome means."); *In re Ski Train Fire of Nov. 11, 2000*

Tholen can make neither of these showings.  Assuming Tholen is seeking testimony concerning the company's finances, there is no reason to assume that Mr. Howard—who is not involved in the day-to-day operation of the company—has any unique knowledge of the company's finances that cannot be obtained through another corporate witness, such as the company's chief financial officer, or another officer or employee with direct supervision over the company's financial affairs.  Nor can Tholen demonstrate that he has exhausted this possibility.  To the contrary, after being granted leave in August 2018 to amend his complaint to add a punitive damages claim, Tholen made no effort to seek information about Assist America's finances from an appropriate corporate witness—such as by issuing a Rule 30(b)(6) deposition notice for a witness who could speak to the topic.  Instead, Tholen went straight to the top of the company, immediately noticing a deposition for Mr. Howard.

Only *last Friday*, after telephonically meeting and conferring with undersigned counsel, did Tholen take any step toward pursuing the discovery he seeks from the company instead, by challenging discovery objections to producing financial information that Assist America had made months earlier (before Tholen was permitted to add a punitive damages claim to the Complaint).  *See* Dkt. No. 135.  Among other things, Tholen is challenging Assist America's prior refusal to designate a Rule 30(b)(6) witness to testify about financial information.  *See* Dkt. No. 137 at 2, 5.  Thus, far from exhausting this alternative avenue of discovery, Tholen has just begun to pursue it.  It makes no sense to force Mr. Howard to sit for a deposition when Tholen not only can seek the

---

*Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) ("Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."); *Treppel v. Biovail Corp.*, 2006 WL 468314, at *3 (S.D.N.Y. Feb. 28, 2006) (granting protective order because "[t]he Plaintiff has not explained why the noticed [executives] are believed to have personal knowledge of the underlying events, nor why that knowledge is believed to be unique"); *Filetech, S.A. v. France Telecom, S.A.*, 1999 WL 92517, at *2 (S.D.N.Y. Feb. 17, 1999) (granting protective order because "[i]t seems likely that lesser [corporate] employees are available to furnish information sufficient to satisfy [the plaintiff's] inquiry . . . . In any event, plaintiff is required by this Order to explore that likelihood in the first instance").

same information from elsewhere in the company, but is *in the process* of doing so. *See, e.g.*, *Filetech*, 1999 WL 92517, at *2 (granting protective order because "[i]t seems likely that lesser [corporate] employees are available to furnish information sufficient to satisfy [the plaintiff's] inquiry . . . . In any event, plaintiff is required by this Order to explore that likelihood in the first instance."); *Stone v. Morton Int'l Inc.*, 170 F.R.D. 498, 504 (D. Utah 1997) ("Plaintiff may not take the deposition of [corporate executive] without first showing compliance with Rule 30(b)(6) . . . or other discovery methods and the reasonable exhaustion of the relevant subject matter.").

## CONCLUSION

For the foregoing reasons, Tholen's subpoena should be quashed and a protective order entered prohibiting the deposition.

Dated:  November 20, 2018  
  New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

_____  
Serrin Turner  
Ryan S. Baasch  
885 Third Avenue  
New York, NY 10022  
Tel: (212) 906-1200  
serrin.turner@lw.com  
ryan.baasch@lw.com

*Attorneys for Non-Party George Howard III*